IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVE DERRIG, ) | |
| ) | |
| Plaintiff ) | |
| ) | No. 08 C 7193 |
| v. ) | |
| ) | The Honorable William J. Hibbler |
| ) | |
| RICH HARVEST FARMS CO. AND JERRY RICH, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Dave Derrig worked as a golf professional at Rich Harvest Farms a golf course and country club owned and operated by Jerry Rich. Derrig alleges that Rich Harvest Farms failed to comply with the Fair Labor Standards Act because it did not compensate him at one-and-one-half times his regular hourly rate for overtime hours. The Defendants ask for partial summary judgment, arguing that Rich Harvest Farms was exempt from this requirement of the FLSA pursuant to the "seasonal exemption" for amusement or recreational establishments. The facts in this dispute are straightforward and undisputed, making the question of the applicability of the seasonal exemption a pure question of law.

Rich Harvest operates a golf course in Sugar Grove, Illinois. Rich Harvest's golf course is a private course, and membership is by invitation only. In fact, according to Derrig, Rich Harvest has a scant 50 members. In 2006, Rich Harvest had total receipts of $3,004,043. Rich Harvest derives just under 50% of its receipts from golf course fees. It derives another 44% of its receipts from membership fees. Rich Harvest's remaining receipts come largely from interest income and rental income. According to Rich Harvest's records, it received $1,048,325 of its $1,311,825 in membership income

1

in April 2006. Rich Harvest received $1,261,907 of its $1,413,999 in golf course fees between June 1, 2006 and November 30, 2006, and received only $152,092 in January-May and December 2006.

Derrig worked for Rich Harvest between March 2007 and October 2007, and claims that during that time Rich Harvest failed to pay him overtime during his employment.

Congress passed the Fair Labor Standards Act in 1938 in order to eliminate labor conditions "detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). Among other things, the FLSA mandates that employers pay employees a minimum hourly rate and that it compensate employees differently for hours worked in excess of forty hours per week. 29 U.S.C. § 206, 207. These provisions, however, do not apply to employees "employed by an establishment which is an amusement or recreational establishment" that operates seasonally. 29 U.S.C. § 213(a)(3).

Employees fall within the so-called seasonal exemption if their employers do not operate for more than seven months during a calendar year or if during the preceding calendar year the employers' receipts for the six lowest earning months are not more than one-third of their total receipts. 29 U.S.C. § 213(a)(3). The employer bears the burden of proving that an employee falls within an FLSA exemption. *Demos v. City of Indianapolis*, 302 F.3d 698, 701 (7th Cir. 2002). An employee must fit plainly and unmistakably within the exemption's terms and courts should construe the exemptions narrowly. *Id.*

The parties' first dispute lies in the method by which Rich Harvest computes its receipts. Rich Harvest received just under 35% of its total receipts in the form of membership income from the month of April 2006. When Rich Harvest calculates its best and worst six months receipts, it attributes the 35% of its total receipts from April 2006 membership income solely to April 2006. Utilizing this

2

method of accounting, Rich Harvest received 72.5% of its receipts from its best six months and 27.5% of its receipts from its worst six months, which would qualify it from the seasonal exemption. Derrig, however, argues that Rich Harvest should be forced to account for the April 2006 membership income using an accrual-based accounting, spreading the membership income equally among the twelve months of 2006. Utilizing this method of accounting, Rich Harvest received 57% of its receipts in its best six months and 43% of its receipts in its worst six months, which would exclude it from the seasonal exemption. Derrig contends that this dispute is a factual dispute, but plainly it is a legal question.

The seasonal exemption excludes recreational employers that have "sharp peak and slack seasons" from the wage and hour requirements as permanent, year-round operations because, due to the nature of their business, they may require longer hours in a shorter season. *See Brock v. Louvers and Dampers, Inc.*, 817 F.2d 1255, 1258-1259 (6th Cir. 1987). It allows recreational employers to employ people on a seasonal basis without having "to pay the relatively high minimum wages required by the Fair Labor Standards Act." *Brennan v. Yellowstone Park Lines*, 478 F.2d 285, 288 (10th Cir. 1973). Derrig argues that this purpose is lost if Rich Harvest is allowed to attribute its membership income largely to a single month rather than to spread it around. The Court disagrees.

Derrig argues that Rich Harvest "manipulates" its receipts by demanding that its members pay their dues in April and in doing so has "load[ed]" that month "with sufficient revenue to tip the percentages" so that it can claim the exemption. (Pl. Resp. at 6). Derrig's argument is unconvincing for several reasons. First, Derrig points to nothing in the record to suggest that Rich harvest mandates that its members pay their dues in April. (Pl. Resp. at 6). In fact, Rich Harvest received 20% of its membership income in months other than April 2006. The Court will not speculate about facts outside of the record and will not infer that Rich Harvest required members to pay their membership in April

3

2006. And if Rich Harvest did not require members to pay their membership in April 2006, then Derrig's argument that it somehow is "manipulating" its receipts lacks evidentiary support.

Second, at least three other courts have rejected Derrig's theory. *See, Liger v. New Orleans Hornets NBA Ltd P'Ship*, 565 F. Supp. 2d 680, 685-86 (E.D. La. 2008); *Bridewell v. Cincinnati Reds*, 155 F.3d 828, 829-30 (6th Cir. 1998); *Hays v. City of Pauls Valley*, 74 F.3d 1002, 1006 (10th Cir. 1996). In *Bridewell* and *Liger* the employers, professional sports teams, received income in the form of advance season ticket purchases. *Liger*, 565 F. Supp. 2d at 685-86; *Bridewell*, 155 F.3d at 830. Each franchise sought to employ an accrual method of accounting, attributing the income it received from advance purchases only when the franchise earned the income by hosting the game. *Liger*, 565. F. Supp. 2d at 685-86; *Bridewell*, 155 F.3d at 830. Both courts rejected the franchises' accounting method, noting that the statute uses the term "receipts" and not "revenue" or "income," and that employers must account for receipts when they actually receive the payment. *Bridewell*, 155 F. 3d at 830 (noting that "if Congress had wanted the operation of § 213(a)(3)(B) to hinge upon the method of accounting . . . then it should have chosen appropriate statutory language). The Court finds the logic of *Bridewell* and *Liger* persuasive.

Finally, the Court finds that Derrig's suggested method of accounting does not comport with the purpose behind the exemption. As noted earlier, the seasonal exemption allows employers that operate a seasonal establishment, with sharp, but short, peak hours, to remain unhindered by the FLSA's overtime requirements. The essence of this inquiry, then, is whether the establishment is "truly seasonal." *Brock*, 817 F.2d at 1259. Derrig argues that the membership fees entitle the members to use the facilities "year round," and thus should be spread equally among the twelve months. But why? Rich Harvest received over 89% of its golfing activities in its best six months, clearly demonstrating

the seasonal nature of the enterprise. Even when Rich Harvest's rental income, the only category of receipts other than golfing receipts and membership income attributable to its members, is added to its golfing receipts, it qualifies as a seasonal establishment. Rich Harvest received 86% of its golfing receipts and rental income in its best six months. In other words, Rich Harvest receives the bulk of its receipts in a six month period. If the Court were to pro-rate Rich Harvest's membership income, it would prorate that income commensurate with how its members enjoyed Rich Harvest's services.

The parties next dispute whether Rich Harvest is an amusement or recreational establishment that is eligible for the seasonal exemption. Derrig argues that because Rich Harvest is a private club, with less than 50 members, and not generally open to the public, the Court should not consider it as an amusement or recreational establishment. Again, the Court disagrees.

Section 13(a)(3) does not define what constitutes an amusement or recreational establishment. 29 U.S.C. § 213(a)(3). Nor does § 213(a)(3) limit the seasonal exemption to amusement or recreational establishments that are not open to the general public. Instead, Derrig finds support in the Department of Labor's Field Operations Handbook and the Code of Federal Regulations. To be sure, both the Field Operations Handbook and the Code of Federal Regulations interpret § 213(a)(3) to apply only to establishments that are open to the general public. *See Dept. of Labor Field Operations Handbook*, 4/15/1994, Rev. 607 at 25j06(b); 29 C.F.R. § 779.385. Part 779 of the Regulations, however, is merely an interpretive bulletin and does not have the force of law. *See* 29 C.F.R. § 779.0; *Howard v. City of Springfield, Ill.*, 274 F.3d 1141, 1146 (7th Cir. 2002) (noting that Part 778 is also an interpretive bulletin). Accordingly, the Court will rely on the regulation (and the Department of Labor Field Operations Handbook) only to the extent that they are persuasive. *Howard*, 274 F.3d at 1146.

The *Brock* court dealt with precisely this issue and concluded that Congress did not intend to limit the seasonal exemption to public establishments. The Court will not replicate the reasoning in *Brock*, which details the plain language of the statute as well as its legislative and statutory history. *Brock*, 817 F.2d at 1256-58. The Court finds the reasoning in *Brock* persuasive and concludes similarly that the § 213(a)(3) does not include a public accessibility requirement.

The Court concludes that there is no dispute of material fact as to whether Rich Harvest is a seasonal recreational establishment. Therefore, the Court holds that Rich Harvest is exempt from the requirements of 29 U.S.C. § 207(a)(1), pursuant to 29 U.S.C. § 213(a)(3). The Court GRANTS Rich Harvest's Motion for Summary Judgment on Counts I, II and III of Derrig's Complaint. Derrig's remaining claims are state law claims, on which the parties have conducted no discovery. Derrig does not contend that the statute of limitations for these state law claims has passed. The Court finds that there is no reason to retain jurisdiction over Derrig's supplemental state law claims and dismisses those claims without prejudice. *See Sharp Elec. Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514-515 (7th Cir. 2009); 28 U.S.C. § 1367(c)(3).

IT IS SO ORDERED.

2/1/10
Dated

Hon. William J. Hibbler
U.S. District Court